Kenneth EATON, Plaintiff,

v.

David MENELEY and Shawnee
County, Kansas,
Defendants.

Janet Price and Patricia McClellan,
Plaintiffs,

v.

David Meneley and Shawnee County,
Kansas, Defendants.

Nos. 01–2097–KHV, 01–2098–CM.

United States District Court,
D. Kansas.

Jan. 9, 2002.

Elizabeth R. Herbert, Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, for Kenneth Eaton.

Richard V. Eckert, Jonathon C. Brzon, Office of Shawnee County Counselor, Ron D. Martinek, Parker & Hay, LLP, Topeka, KS, for David Meneley and County of Shawnee, Kansas.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs bring these actions under 42 U.S.C. § 1983, alleging that defendants,

acting under color of state law, deprived them of constitutionally protected rights of freedom of association, due process and privacy. In addition, plaintiffs assert a state law claim for invasion of privacy. These matters come before the Court on Defendant David Meneley's Motion To Dismiss On The Basis Of Qualified Immunity And F.R.C.P. 12(b)(6) Failure To State A Claim (Doc. # 17 in *Eaton v. Meneley, et al.*, Case No. 01–2097–KHV and Doc. # 11 in *Price, et al. v. Meneley, et al.*, Case No. 01–2098–CM), filed August 16, 2001. For reasons set forth below, the Court finds that defendant's motions should be sustained in part and overruled in part.

## Standards For Motion To Dismiss For Failure To State A Claim

In ruling on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiffs. See *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). The issue in reviewing the sufficiency of plaintiffs' complaints is not whether plaintiffs will prevail, but whether they are entitled to offer evidence to support their claims. See *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved. See *id.* The Court may not dismiss a case for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## Factual Background

Plaintiffs' complaints may be summarized as follows:

Plaintiffs Kenneth Eaton, Janet Price and Patricia McClennan reside in Shawnee County, Kansas. In March, 1999, plaintiffs sponsored a recall petition against David Meneley, who then acted as Sheriff of Shawnee County. Because of this protected political activity, Meneley ran unauthorized and illegal criminal history checks on McClellan and Price. Meneley falsified the reasons for running the records checks, and failed to follow procedural requirements to access the criminal history information.

The fact that Meneley had run the criminal history checks became public knowledge.[1] Because of the illegal checks on McClellan and Price and the publicity surrounding them, the public was also advised that Meneley had run a record check on Eaton.[2] Public knowledge that Meneley had run record checks on plaintiffs caused other possible supporters of the petition drive to fear reprisal by Meneley. Thus, plaintiffs' work as petition drive organizers became more difficult. Further, Meneley, his attorney and close supporters told the public that Meneley had requested the record checks for legitimate law enforcement purposes. As a result, plaintiffs were subjected to unwarranted questioning and concerns about their integrity. Plaintiffs suffered embarrassment and humiliation, and became afraid of what other steps Meneley might take towards them.

---

1. The complaint does not state who made public the fact that Meneley ran the criminal history checks on McClellan and Price.

2. The complaint does not state who told the public that Meneley ran a criminal history check on Eaton.

## Analysis

Meneley asks the Court to dismiss plaintiffs' claims because (1) plaintiffs have not alleged facts which support their assertion that Meneley deprived them of constitutionally protected rights and (2) he is entitled to qualified immunity from suit on plaintiffs' Section 1983 claims because plaintiffs have not alleged facts which establish that he violated any of their clearly established rights.

### I. Due Process

■ Plaintiffs claim that Meneley deprived them of a due process right to privacy by falsifying his reasons for accessing records and by-passing the procedural steps for accessing the records. It is not entirely clear whether plaintiffs assert that Meneley violated their substantive due process rights by impinging upon their right to privacy, or whether they assert that Meneley violated procedural due process safeguards. As Meneley points out, the complaints do not set forth any specific federal or constitutional procedural safeguards that he allegedly violated. See, e.g., *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 519–20 (10th Cir.1998) (procedural due process claim must set forth procedures alleged due under law). Plaintiffs have failed to state a claim for a procedural due process violation. The Court thus proceeds to analyze whether plaintiffs have set forth a claim for a substantive due process violation of their privacy interests.

■ Cases involving the substantive due process right to privacy address two different kinds of interests: "the individual interest in avoiding disclosure of personal matters, and ... the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 51 L.Ed.2d 64

(1977). We deal here with the first type of privacy interest.

■ "Due process ... implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir.1995) (further quotations omitted). Information is subject to this constitutional protection when an individual has a "legitimate expectation ... that it will remain confidential while in the state's possession." *Id.* The legitimacy of the individual's expectation depends, at least in part, on "the intimate or otherwise personal nature of the material which the state possesses." *Id.* If the individual's expectation of confidentiality is legitimate, then disclosure of such material "must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." *Id.*

Meneley contends that plaintiffs have failed to allege that they had a legitimate expectation of privacy because they have not alleged that he released any material of a personal nature. Meneley relies upon on this Court's decision in *Patrick v. City of Overland Park, Kan.*, 937 F.Supp. 1491 (D.Kan.1996).

In *Patrick*, defendants allegedly suspected that Patrick would run against the incumbent Republican in a primary election for the United States House of Representatives. See *id.* at 1494. Patrick alleged that defendants sought to damage him in his potential political campaign. See *id.* Defendants allegedly obtained a search of confidential official records and conducted a complete criminal investigation of Patrick. See *id.* The investigation allegedly uncovered a "highly sensitive, non-public" file which contained private information about Patrick's family. *Id.* at 1495.[3] The Court found that Patrick had

---

**3.** This Court also found that Patrick had no privacy interest in information about his former stepdaughter, so that any privacy interest in such information belonged to her and not to Patrick.

not set forth minimal factual allegations to demonstrate that defendants had failed to keep private information which was personal to him, and which he legitimately expected would remain confidential.

■■■ Likewise in this case, plaintiffs have not set forth factual allegations that defendants had failed to keep private information which was personal to plaintiffs and which they legitimately expected would remain confidential while in the state's possession.[4]

As Meneley points out, plaintiffs do not allege that he disclosed any private information about them, or indeed, that he disclosed any information about them at all. Plaintiffs allege only that Meneley ran a record check on them, and that information is *not* private information personal to plaintiffs. Further, plaintiffs do not allege that Meneley was involved in making public the fact that record checks had been run. Meneley is therefore entitled to dismissal of plaintiffs' Section 1983 claims that are based on a violation of due process right to privacy.[5]

## II. First Amendment

■■■ Meneley argues that plaintiffs' complaints must be dismissed because although they allege that plaintiffs' political activities (including the petition drive) were chilled when the public learned of the record checks, they do not allege that Meneley himself did anything to disseminate the fact that he had run the checks. In other words, he contends that merely running criminal history checks on Price and McClellan did not violate their First Amendment right to political expression and association.

■■■ The right of expressive association protects the freedom to associate for purposes of engaging in activities protected by the First Amendment. See *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). In order to establish their First Amendment claims, plaintiffs must prove wrongful conduct by defendants and that such wrongful conduct had a chilling effect on plaintiffs' associational rights. See *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1531 n. 4 (10th Cir.1994). In order to defeat a motion to dismiss,

---

**4.** Because the Court finds that plaintiffs have not identified any information which they legitimately expected would remain confidential, the Court need not address whether in some cases there may be a federal privacy interest in criminal history information. In *Patrick*, this Court stated that the state law restriction on circumstances under which criminal justice agencies may request criminal history information, § K.S.A. 22–4707(a), does not create or demonstrate a federal privacy interest:

> While state statutes and regulations may inform our judgment regarding the scope of constitutional rights, they "fall far short of the kind of proof necessary" to establish a reasonable expectation of privacy. *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995), quoting *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir.1989). Mere allegations that an official failed to abide by state law do not suffice to state a constitutional claim. *Nilson*, 45 F.3d at 372. In

order to maintain an action under § 1983, plaintiff must establish that defendants deprived him of a right premised in the Constitution or federal laws and that they achieved such deprivation while acting under color of law. *Doe v. Bagan*, 41 F.3d 571, 573–74 (10th Cir.1994). Thus, plaintiff's allegation that the search conducted on his criminal history background violated Kansas law is not pertinent to his claims under § 1983; those claims must stand or fall with reference to constitutional law and not to Kansas law.

937 F.Supp. at 1497 n. 3.

**5.** Meneley also points out that Eaton does not allege that Meneley ever ran a record check on him. Thus, he argues that Eaton has no standing to bring a due process claim. Whether characterized as a standing problem or simply a failure to state a claim, the Court agrees that Eaton has failed to allege a substantive due process privacy claim.

plaintiffs need only allege those elements. Plaintiffs have done so in this case.

Plaintiffs have alleged specific actions by a governmental employee, and the chilling effect is apparent. Price and McClellan have alleged that they were targets of Meneley's illegal records check, and that they suffered harm as a result of those checks. Further, although Eaton does not allege that Meneley ran a record check on him, he asserts that the public was told that Meneley had run a record check on him. More importantly, plaintiffs allege that Meneley told the public that the records checks were for legitimate law enforcement purposes. The alleged chilling effect of this statement is "readily apparent." See *id.* at 1530. These allegations are sufficient to overcome Meneley's motion to dismiss and entitle plaintiffs to discovery. Should plaintiffs be unable to prove those facts which would prove the allegations of their complaints, defendants may prevail on summary judgment motions.

## III. Qualified Immunity

 Meneley claims that he is protected from plaintiffs' Section 1983 claims by the doctrine of qualified immunity. Because the Court has already determined that Meneley is entitled to dismissal of the due process/privacy claims, the one remaining issue is whether he is entitled to qualified immunity on the Section 1983 claims which are based on the First Amendment.

Meneley first appears to contend that the Tenth Circuit applies a heightened pleading requirement when defendant raises a qualified immunity defense in a motion to dismiss. This Court, until recently, would have agreed. See *Jackson v. City of Kansas City, Kan.*, No. 99–2344–KHV, 2000 WL 574986 at *4 (D.Kan. April 6, 2000).

In *Harlow v. Fitzgerald*, the Supreme Court eliminated the subjective, or intent, element of qualified immunity, and held that a plaintiff could defeat a claim of qualified immunity only by demonstrating that the defendant violated clearly established statutory or constitutional rights of which a reasonable person would have known. 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). After *Harlow*, the Tenth Circuit and others imposed a heightened pleading requirement when a defendant raised a qualified immunity defense. See *Sawyer v. County of Creek*, 908 F.2d 663, 665–67 (10th Cir.1990) (complaint must contain specific, non-conclusory allegations of fact sufficient to sustain conclusion that defendant violated clearly established law); see also *Branch v. Tunnell*, 14 F.3d 449, 452 (9th Cir.1994).

In *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), plaintiff sued a government official who asserted qualified immunity, and plaintiff's cause of action required that he prove an improper motive by defendant. The Supreme Court rejected the D.C. Circuit's requirement (applied on summary judgment and at trial) that plaintiff prove defendant's improper motive by clear and convincing evidence. See *id.* at 591–92, 118 S.Ct. 1584. The Court found that a heightened standard of proof alters the cause of action so as to undermine the purpose of Section 1983—to remedy a violation of federal rights. See *id.*

After *Crawford–El*, some Circuits found that a heightened pleading requirement could not stand. See, e.g., *Harbury v. Deutch*, 233 F.3d 596, 611 (D.C.Cir.2000); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir.1998). But see *Judge v. City of Lowell*, 160 F.3d 67 (1st Cir.1998) (relying on *Crawford–El* discussion of trial court's obligation to ensure that officials are not subjected to unnecessary and burdensome

discovery or trial proceedings, including option to order reply to answer or grant motion for more definite statement). For a time after *Crawford–El*, the Tenth Circuit continued to apply a heightened pleading standard. See *Watkins v. Colo. Dep't of Corr.*, 1999 WL 594584 at * 1, 188 F.3d 520 (10th Cir. Aug.9, 1999).

Recently, however, the Tenth Circuit concluded that the "heightened pleading requirement cannot survive *Crawford–El.*" *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir.2001). The Court explained:

> There is no relevant difference between the D.C. Circuit's heightened burden of proof at summary judgment and this court's heightened pleading requirement which justifies the continuing viability of the latter after *Crawford–El.* See *Nance*, 147 F.3d at 590 (citing *Crawford–El* for the proposition that "civil rights complaints are not held to a higher standard than complaints in other civil litigation"). Like the D.C. Circuit's heightened burden of proof, this court's heightened pleading requirement was based on *Harlow.* See *Breidenbach v. Bolish*, 126 F.3d 1288, 1292 (10th Cir. 1997). Nevertheless, as the Supreme Court made clear in *Crawford–El*, neither the holding nor the reasoning of Harlow, a qualified immunity case, warranted a change in the requirements of a plaintiff's affirmative case. See *Crawford–El*, 118 S.Ct. at 1590–94. Like the D.C. Circuit's heightened proof requirement, this court's heightened pleading requirement finds no support in the Federal Rules of Civil Procedure and constitutes a deviation from the notice-pleading standards of Rule 8. See Fed. R.Civ.P. 8(a) ("A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...."); Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Additionally, the manner in which the Court framed the "broad" question presented for appeal— "whether the courts of appeals may craft special procedural rules for [civil rights cases that require proof of improper motive] to protect public servants from the burdens of trial and discovery"—suggests that the Court's ruling is not limited to the D.C. Circuit's heightened burden of proof. *Crawford–El*, 118 S.Ct. at 1587. Finally, to the extent the Supreme Court considered whether a court may require a plaintiff to plead " 'specific, nonconclusory factual allegations' " to survive a prediscovery motion for dismissal, it concluded this option resides in the discretion of federal trial judges, not federal circuit courts. *Id.* at 1596–97 (quoting *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)) (Kennedy, J., concurring in judgment). This court reiterates that trial judges retain discretion to order a reply to a defendant's answer, grant a defendant's motion for a more definite statement, or tightly confine discovery. See Fed.R.Civ.P. 7(a), 12(e); *Crawford–El*, 118 S.Ct. at 1596–97. The district court in this case, however, thought Plaintiffs had alleged sufficient facts to be allowed discovery. See *Currier v. Doran*, No. CIV 97–0477 BB/JHG, slip op. at 7, 1999 WL 33261404 (D.N.M.Aug.19, 1999) ("The Court cannot say Plaintiffs would be unable to recover damages from Doran under any set of facts alleged in the complaint."); *id.* at 8 ("[T]he Court believes Plaintiffs have alleged sufficient facts to be allowed discovery ...."); *id.* at 9 ("Given the stay of discovery that has been imposed in this case, it would not be fair to require the Plaintiffs to assert more facts than they have been able to allege at this point."). Therefore, this court will review Defendants'

motions under the customary motion to dismiss standard.

242 F.3d at 916–17. Currier thus broadly rejects a heightened pleading standard where defendants invoke the defense of qualified immunity in a motion to dismiss.

Meneley asserts that even after Currier, plaintiff must still meet the "heavy two part burden of pleading all facts needed to sustain a conclusion that defendant violated plaintiff's constitutional rights, and that those rights were clearly established at the time of the violation." See *Medina v. Cram*, 252 F.3d 1124 (10th Cir.2001) (applying two part burden to motion for summary judgment). Meneley acknowledges that Currier and Medina seem to establish that (1) in dealing with a motion to dismiss, the court applies the traditional failure to state a claim standard, and (2) in dealing with a summary judgment motion, the court applies a heavy two-part burden on plaintiff to get past a qualified immunity defense. Meneley then suggests that the critical distinction is not the nature of the motion, however, but the specific issue raised which is the subject of the qualified immunity defense. In particular, Meneley notes that according to Medina, the Crawford–El court repeatedly noted that it was addressing standards of proof in the context of a constitutional claim involving improper motive, rather than in the context of a qualified immunity defense. See *Medina*, 252 F.3d at 1129. Meneley thus asserts that even on a motion to dismiss, plaintiff must satisfy the "heavy two-part burden" once defendant has asserted the defense of qualified immunity.

This Court will take the Tenth Circuit's statement in Currier at face value: "[a] heightened pleading requirement finds no support in the Federal Rules of Civil Procedure and constitutes a deviation from the notice-pleading standards of Rule 8."

 In ruling on qualified immunity, the Court first must assess whether defen-

dant's alleged actions violated a constitutional or statutory right. *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1204 (10th Cir.1998) (quotation omitted). If the complaint alleges a violation of a constitutional right, the Court then determines if the constitutional right is clearly established so that reasonable officials would have understood that their conduct violated the right. See *id* at 1204. To be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains. See *Medina*, 960 F.2d at 1498.

Meneley contends that his alleged actions—running unauthorized and illegal criminal history checks on Price and McClellan, without any allegation that he disseminated that information or any information which he obtained from those checks—do not violate plaintiffs' free association rights. As set forth above, however, the Court has already determined that plaintiffs have stated a claim for a constitutional violation of their First Amendment rights.

Furthermore, Meneley does not argue that the law which governed the First Amendment claim was unclear. "Since at least 1972, it has been clearly established that 'governmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights,' so long as the challenging individual has alleged that he has sustained ... a direct injury as a result of the governmental action." *Patrick*, 937 F.Supp. at 1499–1500 (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). Because plaintiffs have alleged a violation of a constitutional right and a direct injury resulting from that violation, Meneley is not entitled to dismissal of plaintiffs' First

Amendment claims on the basis of qualified immunity.

IV. Invasion of Privacy

 In his reply brief, Meneley contends that plaintiffs have failed to set forth a state law claim for invasion of privacy. His motions to dismiss, however, do not address plaintiffs' state law claims for invasion of privacy. The Court will not address issues raised for the first time in a reply brief. See *IMC Chem., Inc. v. Niro, Inc.*, 30 F.Supp.2d 1328, 1330 (D.Kan.1998) (court will not consider new arguments and issues presented in a reply brief because plaintiff has not had an opportunity to respond).

**IT IS THEREFORE ORDERED** that Defendant David Meneley's Motion To Dismiss On The Basis Of Qualified Immunity And F.R.C.P. 12(b)(6) Failure To State A Claim (Doc. #17 in Eaton v. Meneley, et al., Case No. 01–2097–KHV); (Doc. #11 in Price, et al. v. Meneley, et al., Case No. 01–2098–CM), filed August 16, 2001, be and hereby is **SUSTAINED IN PART** and **OVERRULED IN PART.**

**IT IS FURTHER ORDERED** that plaintiffs' claims under 42 U.S.C. § 1983 that Meneley violated their Fourteenth Amendment rights to procedural due process and substantive due process rights to privacy hereby are **DISMISSED.**

**IT IS FURTHER ORDERED** that plaintiffs' claims under 42 U.S.C. § 1983 that Meneley violated their First Amendment rights to political expression as well as their state law claim of invasion of privacy remain in the case.